Nott, J.,
delivered the opinion of the court:
It is unquestioned in this case that a loss occurred, that the loss was without fault or neglect on the part of the officer, and that no suspicions of fraud or collusion in the slightest degree cloud the claimant’s case. Two points, however, have been raised, which have received the serious attention of the court.
The first of these is, that the amount of the loss has not been positively proven. It has been shown by evidence that a package of money was in the paymaster’s official safe, and that the safe was broken open and the package stolen; that the paymaster had counted and assorted those packages the day previous to the robbery ; that he had no clerk or assistant at the time; and that no person save himself was cognizant of the amount of money which those packages contained. If a disbursing-officer were a competent witness for himself in such a case, this omission might be supplied in legal form. But it was determined in Christianas Case (7 O. Cls. R., p. 431) that he cannot be a witness on his own behalf to prove the contents of a captured package, being debarred both by the statute (Rev. Stat., 1079) and the common law. Two things, however, have been indisputably shown: first, that a loss occurred for which the claimant was not responsible and with which he should not be charged; second, that it is absolutely impossible to establish the precise amount of the loss by auy positive proof. The resulting question on such facts is: Did Congress intend that an officer thus circumstanced should be charged with the full amount of the loss"!
To answer this question in the affirmative would be to say that the remedy provided by the Disbursing-officers Act is practically worthless, and that Congress really intended that the disbursing-officers of the Covernment shall be answerable for losses over which they have no control, and which no amount of human foresight could guard against. Disbursing-officers, from the nature of their official duties, must ordinarily be the only persons cognizant of the amount of public moneys in their possession. It would be official negligence were they to intrust the counting and assorting of such funds to unofficial hands; and were they to call in third persons, for their own protection, to witness the amounts in their possession, it would be a dangerous practice, inviting the robbery of large amounts, and vio- *701 Iating all approved ideas of official prudence. Undoubtedly, tbe more completely a disbursing-officer conceals the amount of moneys in his hands, the more circumspectly he conducts his official business.
It appears in this case that the officer had funds in his possession to an amount exceeding those lost; that immediately after the robbery he notified the commanding officer of the post of the amount of money which was in the rifled safe ; that he then reported the amount of the loss to his superior officer in the Pay Department; that he testified to it on the trial of the robbers, and that he charged it on his subsequent official returns and accounts. It also appears that he was a person of good personal and official character; that all of his returns and accounts had been accurate and free from error or suspicion, and that the amount claimed to have been lost was the only deficiency that occurred in his accounts after several years of service. If there were any other item of evidence which from the nature of things could be supplied, the court would require it to be produced, or throw the responsibility of its omission upon the claimant. But upon the facts proved we feel satisfied that this amount of funds was actually stolen, and that within the legislative intent an officer thus situated should receive a credit for that amount.
It is also to be noted that the statute does not require specific proof of the amount. After providing for the jurisdiction of the court in the first section, it goes on to say in the second, “ That whenever said court shall have ascertained the facts of any such loss to have been without fault or neglect on the part of any such officer, it shall malee a decreeThese aré, indeed, all the “ facts” which the court is specifically required to “ ascertain.” When these are ascertained, it is required to make a decree “ setting forth the amount thereof; upon which the proper accounting-officers of the Treasury shall allozo to such officer the amount so decreed as a credit in the settlement of Ms accounts.” Congress manifestly intended that when, in a case like this, the main facts were ascertained of a loss on the one hand, and of freedom from fault or neglect on the other, the court should be as untrammeled as possible in “ setting forth ” in its decree the amount, which should not be left to the discretion of the auditing-officers.
The second objection which has been raised by the counsel for *702 the Government is the statute of limitations. Briefly stated, the facts upon which this objection to the case must be decided are these: The loss occurred in April, 1865; the claimant credited himself with the amount, i. e., he charged the loss to the Government in his next account-current; this item of credit was not acted upon by the accounting-officers of the Treasury until the final revision of his accounts on the 6th November, 1871; and on the 12th April, 1873, the claimant brought this suit. The suit, therefore, was brought more than six years after the loss occurred, and less than six years after the item of loss or claim for credit was charged to the claimant at the Treasury.
The statute of limitations uses the word “ claim,” when defining the subjects as to which a suit may be barred by lapse of time, and the Disbursing-officers Act also uses the word u claim ” when defining the subject as to which relief may be sought un.der its provisions. But the statute of limitations forms a part of the Amended. Court of Claims Act, (12 Stat. L., 765, § 10,) and that act existed before the Disbusing-officers Act, and the word “ claims ” in it has been defined by the Supreme Court’ to mean a money-demand on contract, (Alire's Case, 7 O. 01s. B>., p. 28.) It is not to be doubted^that subsequent subjects of jurisdiction would be subject to the provisions of the statute of limitations if they were in the nature of money-demands against the Government. But in the case now before us there is no debt owing from the Government to the claimant, and uo money-demand asserted by the claimant against the Government. All the world over, statutes of limitation are intended for cases where one man may owe a debt to another, which the latter has neglected to prosecute within a reasonable time. They are intended for the protection of the debtor, who cannot compel a suit against himself, and are applied against the creditor, who has purposely delayed to bring the controversy to judicial determination. In this case, if there be any debt owing it is from the claimant to the Government, and the anomaly is that it is the creditor who has had a cause of action which might have been asserted at any time, who is insisting that the statute of limitations should exclude a decision upon the merits. It is evident here that the Government does not occupy the position of a debtor, and that it might have forced a judicial determination of the controversy at any time after *703 the loss, by bringing suit against the claimant upon the only existing canse of action. In view of these facts, and of the decision of the Supreme Court in Alire’s Case, we are inclined to hold that the statnte of limitations is not applicable to this class of cases, and that the purpose of the Disbursing-officers Act was merely to secure the judicial ascertainment of a fact pending the settlement of an officer’s accounts at the Treasury, so as to inform the accounting-officers, who have no means for the ascertainment of such i'acts, whether or not a particular credit should be allowed to the party. In harmony with this conclusion is the decision in Hall’s Case, (9 C. Cls. R., p. 270,) where it was held that if a disbursing-officer under compulsion pays over a deficiency found against him by the auditing-officers, and his account at the Treasury is settled and closed, it is too late for him to seek relief under the act; that the act limits such relief to losses “/or which such officer was and is held responsible.” Now, if the doctrine which the Government successfully maintained against a disbursing-officer in that case be law, and if the doctrine which it is now asserting against another disbursing-officer in this case be also law, it is apparent that disbursing-officers will not have the six years which the statute gives to creditors of the Government wherein to bring suits for relief, nor any definable time, and that, on the contrary, the Government will have the power to cut this period short whenever its officers think proper so to do. It does not seem consonant with the spirit of just legislation to say that Congress intended to impose the disability of the statute of limitations, and, at the same time, withhold the period which it expressly gives to those upon whom its disability may fall.
A decree will be entered, in the usual form, directing the proper accounting-officers of the Treasury to allow to the claimant, as a credit in the settlement of his accounts, for funds stolen from him at Franklin, Tex., April 6,1865, the sum of $15,979.87.
Richardson, J., was absent when this case was decided, but took part in the consideration, and was of the opinion that judgment should be for the defendants, on the ground stated by him in Holman’s Oase, (ante.)